UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RODNEY C. RODGERS,

                 Petitioner,                     Case No. 1:07-cv-726

v.                                                 Honorable Gordon J. Quist

JOHN PRELESNIK,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

         This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254. Petitioner is serving a term of 9 to 75 years, imposed by the Oakland County Circuit Court

on November 17, 2004, after Petitioner pleaded guilty to being a fourth felony offender, MICH.

COMP. LAWS § 769.12, and armed robbery, MICH. COMP. LAWS § 750.529. In his *pro se* petition,

Petitioner raises three grounds for relief, as follows:

       I.      THE DENIAL OF APPOINTED APPELLATE COUNSEL AFTER
              GUILTY PLEA VIOLATES PETITIONER'S FOURTEENTH
              AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL
              PROTECTION AND IS CONTRARY TO THE UNITED STATES
              SUPREME COURT DECISION IN *HALBERT V MICHIGAN.*

       II.     WHERE PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF
              COUNSEL, HE SHOULD BE ALLOWED TO WITHDRAW HIS PLEA,
              WHERE COUNSEL INDUCED HIM TO PLEAD GUILTY TO CHARGES
              OF ARMED ROBBERY, WHERE SUCH PLEA WAS ILLUSORY AND
              PREMISED ON COUNSEL'S ERRONEOUS ADVICE REGARDING THE
              ELEMENTS OF THOSE OFFENSES, THUS, BECAUSE OF THE FACTS,
              HE COULD NOT HAVE BEEN PROPERLY CONVICTED OF THOSE
              OFFENSES, US CONST. AMS V, VI, XIV; CONST. 1963, ART 1, SEC 17
              & 20.

III. PETITIONER IS ENTITLED TO RE-SENTENCING WHERE THE STATUTORY SENTENCING GUIDELINES UNDER OV-3 WERE MISSCORED AND IMPOSED SENTENCE IS A DEPARTURE FROM STATUTORY SENTENCING GUIDELINES ABSENT COMPLIANCE WITH THE DEPARTURE REQUIREMENTS AND IN VIOLATION OF DUE PROCESS OF LAW WHERE INACCURATE INFORMATION WAS RELIED UPON IN THE GUIDELINE SCORING AND HIS DEFENSE COUNSEL'S FAILURE TO OBJECT CONSTITUTES INEFFECTIVE ASSISTANCE.

Respondent has filed an answer to the petition (docket #8) stating that the grounds should be denied because they are without merit. Upon review and applying the AEDPA standards, I find that all grounds are without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

The state prosecution arose from an armed robbery at a Wal-Mart store in Auburn Hills, Michigan, on November 22, 2003. Petitioner was charged with one count of armed robbery, and, following a preliminary examination on May 25, 2004, he was bound over on the charge. (P.E. Tr., 38, docket #11.) A supplemental information was filed charging Petitioner as a habitual offender, fourth offense. Subsequently, the prosecutor added unarmed robbery as an alternative count.

At the preliminary examination, the prosecution presented the following evidence about the offense. Ann Przybylski testified that on November 22, 2003, she was working as a cash office associate at the Wal-Mart in Auburn Hills. Her duties were to collect cash from the registers, put the information into the computer and prepare deposits for the bank. (P.E. Tr., 5.) She worked from 4:00 p.m. until closing, which was between midnight and 1:00 a.m. The office is located behind two sets of locked doors. (P.E. Tr., 5-6.) Only the assistant managers, store managers and

cash office associates have access to the key to the cash office door, while the customer service associates have a key only to the outer door. (P.E. Tr., 6.) She was working alone in the cash office. At approximately 11:10 p.m., an announcement was made over the public address system, authorizing associates to go home. She remembered looking again at the clock at 11:22 p.m., as she was sorting the last cash bags from the registers, which were dropped through a slot like a mailbox. (P.E. Tr., 7-8.) At approximately 11:45, she heard two people talking outside the door and playing with the key and the lock. She assumed they were her associates. (P.E. Tr., 8.) When the door opened, she turned around and began to greet her coworkers. (P.E. Tr., 9.) She saw two people she had never seen before, and she identified one of those people as Petitioner. (P.E. Tr., 9-10.) She startled Petitioner, and he backed up and started fumbling with a bandana to cover his face. (P.E. Tr., 10.) Przybylski began to scream, and the two robbers charged in. (P.E. Tr., 11.) The other man was carrying a gun. (P.E. Tr., 12.) They threatened to kill her and told her to cover her face, which she did. Petitioner forced her to the floor and threatened to kill her if she moved. (P.E. Tr., 12.) The other man found duct tape and told Petitioner to tape her head. The two men duct-taped her hands in front of her face, as she had been positioned. (P.E. Tr., 13, 14.) They also taped her ankles together. (P.E. Tr., 13.) Petitioner hit her three times in the face. (P.E. Tr., 13.) She later heard Petitioner's voice ask, "[W]hat about the singles." (P.E. Tr., 15-16.) He also asked whether to take the blue bags. (P.E. Tr., 16.) She could feel a bag being loaded next to her on the right side. (P.E. Tr., 16.) After they finished loading the bags, Petitioner came down to her right side and said, "[I]f you make a move I – I will kill you." (P.E. Tr., 17.) Przybylski sat quietly until a few minutes after she heard the doors close. She then began to work her fingers under the duct tape. (P.E. Tr., 18.) She ripped the duct tape off as far as she could and then got on her knees, pressed a pager button,

and announced over the pager system that they had been robbed. (P.E. Tr. 19.) A few weeks after the robbery, she identified Petitioner and another man from a photo array. (P.E. Tr., 23-24.)

Auburn Hills Police Officer Ronald Tuski testified that he believed the robbery was an inside job, and he sent stills from the store video to various police departments. About two weeks later, the Collinsville, Illinois Police Department contacted him. Tuski was told that one of the Collinsville police detectives had interviewed Petitioner the night before seeing the picture sent by Tuski. When he saw the photo, the detective immediately identified the person in the photo as Petitioner Rodney Rodgers. (P.E. Tr., 25-26.) Tuski made arrangements to interview Petitioner at the Collinsville Police Department. Petitioner agreed to be interviewed, and he was read his *Miranda* rights, though he was not under arrest. (P.E. Tr., 27.) Petitioner told Tuski that Petitioner and a friend of his, Tony Stokes, drove to Michigan. Petitioner planned to pick up ten pounds of marijuana from his cousin. (P.E. Tr., 27.) They drove to an area restaurant, where they met up with Petitioner's brother Robert, a woman named Ida, and a man Petitioner knew as Harvey Moore. (P.E. Tr., 27.) The parties talked and mentioned robbing a Wal-Mart. (P.E. Tr., 27-28.) They drove to the Wal-Mart in Auburn Hills to look around the store. (P.E. Tr., 27-28.) Petitioner told Tuski that they went back at closing time, and Petitioner and Tony Stokes went into the cash office and took the money. (P.E. Tr., 28.) Petitioner acknowledged having a gun, which one of the others subsequently left in the restaurant area that backed up to the cash office. (P.E. Tr., 29.) Petitioner told Tuski that they got a lot of money, but he did not know how much. (P.E. Tr., 29.) Tuski testified that over $143,000.00 was taken in the robbery. (P.E. Tr., 29.) According to Tuski, although he showed Przybylski two or three photo arrays, she did not identify Petitioner. (P.E. Tr., 32.)

Petitioner filed a motion to suppress his statements to police. The court conducted a *Walker*[1] hearing on October 28, 2004. The court heard testimony from four witnesses, including Petitioner. The court denied the motion to suppress and found Petitioner's statements to be admissible at trial. (Walker Hr'g Tr., 109, docket #12.)

On October 29, 2004, Petitioner pleaded guilty to the armed robbery and the fourth habitual offender enhancement. The unarmed robbery count was dismissed. (Plea Tr., 2, docket #13. The guilty plea was entered pursuant to a *Cobbs*[2] agreement that, if the minimum sentence exceeded the bottom of the guidelines range of 81 months, Petitioner would be allowed to withdraw his plea. (Plea Tr., 7.)

On November 17, 2004, Petitioner appeared for sentencing. Given that the bottom of the sentencing guidelines had subsequently been calculated by the probation officer to be 108 months, rather than the 81 months anticipated at the time of the guilty plea, Petitioner moved to withdraw his plea, and the court granted the motion. (Sentencing Transcript, (S. Tr.), 3, docket #14.) Shortly after he left the courtroom, Petitioner changed his mind and advised his attorney that he wished to proceed with sentencing and not withdraw the plea. The court recalled the case. (S. Tr., 4.) Petitioner indicated on the record that he wished to go forward with the sentencing. (S. Tr. 4.) The defense and the prosecution agreed that the presentence report was incorrectly scored on Prior

---

[1]*People v. Walker*, 132 N.W.2d 87 (Mich. 1965) (citing *Jackson v. Denno*, 378 U.S. 368 (1964) (establishing the rule that a defendant's challenge to the voluntariness of a confession must be decided by the trial judge following an evidentiary hearing).

[2]*People v. Cobbs*, 505 N.W.2d 208, 283 (Mich. 1993) (holding that, where a judge preliminarily agrees to a particular sentence as the basis for a defendant's entry of a plea, the defendant must be given an opportunity to withdraw his plea if the subsequent sentence exceeds the preliminary evaluation).

Offense Variable (PRV)-5, Offense Variable (OV)-7, OV-9, and OV-13.  With those changes, the minimum sentencing range would be 108 months to 360 months or life.

Ann Przybylski made a statement at sentencing about the terrifying nature of the armed robbery.  She reported that she was unable to return to work for three and one-half months as a result of post-traumatic stress disorder.  She asked for the maximum sentence.  (S. Tr., 8-10.)  The prosecutor, however, noted that Petitioner had come forward and cooperated with the police and that, because investigations were still open, the prosecution desired his continued cooperation.  (S. Tr., 10-11.)  Defense counsel also emphasized the depth of Petitioner's cooperation, that he was not the leader of the robbery, that he had no prior assaultive behavior, and that he was remorseful.  (S. Tr., 12-13.)  The court sentenced Petitioner at the bottom of the guidelines range, to a term of nine to seventy-five years, together with restitution in the amount of $146,762.00.  (S. Tr., 13.)  The prosecutor indicated that he would agree to amend the restitution to joint and several liability if Petitioner's continued cooperation led to further convictions.  (S. Tr., 14.)  Finally, the court clarified that it had granted Petitioner's request to withdraw his plea, but that Petitioner had changed his mind, indicating that he no longer wished to withdraw the plea, but instead wished to proceed with sentencing.  (S. Tr., 16.)

**B.      Direct Appeal**

On December 23, 2004, Petitioner filed a timely notice of appeal.  The court entered an order appointing appellate counsel on December 27, 2004.  On July 5, 2005, appellate counsel moved to vacate the court's order appointing counsel, representing that he had completed a full review of the court file, had reviewed the plea and sentencing records, and had met with Petitioner to discuss all aspects of the case.  Counsel further represented that Petitioner had refused to sign a

form withdrawing his appeal, but also had failed to advised counsel of any legitimate grounds for appeal or to state how he wished to proceed at that time. (Compl., App'x B, docket #1-2 at 36.) The court granted the motion to vacate the order appointing counsel on July 7, 2005. Petitioner filed a motion to withdraw his guilty plea on August 11, 2005. Treating the motion as one seeking relief from judgment under MICH. CT. R. 6.502, the court denied the motion on October 18, 2005. (Compl., App'x B, docket #1-2 at 16-26.) Petitioner also moved to modify the order of restitution, which was denied on December 14, 2005. On March 15, 2006, Petitioner filed a motion for appointment of appellate counsel, which was denied by the circuit court that same date. (Cir. Ct. Docket Sheet, 8-10, docket #10.)

Petitioner sought leave to appeal to the Michigan Court of Appeals. By unpublished order issued on July 28, 2006, the court of appeals held that the circuit court had improperly treated the motion to withdraw the plea and for resentencing as a motion for relief from judgment, because an appeal was still available to Petitioner. In lieu of granting leave to appeal, the court remanded the matter to the circuit court for review under the proper standard. (*See* 1/24/97 Mich. Ct. App. Ord. (MCOA Ord.), docket #15.)

On remand, the circuit court denied Petitioner's motion to withdraw the plea and for resentencing in an opinion and order issued August 3, 2006. (Compl., App'x A, docket #1-2 at 3-14.) In his brief, filed August 21, 2006, Petitioner raised the same three claims he now presents in his habeas application. (Def.-Appellant's Br. on Appeal, docket #17.) Petitioner also filed a motion for remand, seeking a *Ginther*[3] hearing. In an order issued November 6, 2006, the court of appeals

---

[3]*People v. Ginther*, 212 N.W.2D 212 (Mich. 1973) (holding that a court deciding a defendant's claim of ineffective assistance of counsel must hold an evidentiary hearing when the existing record is not adequate).

denied the motion to remand and denied leave to appeal for lack of merit in the grounds presented. (11/6/06 MCOA Ord., docket #17.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same three claims raised before and rejected by the Michigan Court of Appeals. By order entered May 30, 2007, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (See Mich. Ord., docket #18.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d

at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.

This presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir.

1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to

relief.

## Discussion

I.     Denial of Appellate Counsel

In his first ground for habeas relief, Petitioner contends that he was denied his rights

to due process and equal protection when he was denied the appointment of appellate counsel. In

support of his claim, Petitioner cites *Halbert v. Michigan*, 545 U.S. 605, 617 (2005), in which the

Supreme Court held that the Due Process and Equal Protection Clauses require appointment of

counsel for indigent defendants convicted on pleas of guilty or nolo contendere who seek access to

first-tier review in the Michigan Court of Appeals, even though such review is discretionary under

state law. *Halbert* was decided on June 23, 2005, and Michigan Court Rule 6.425(G)(1)(c) was

adopted in July 2005 to conform to the *Halbert* ruling. *See* MICH. CT. R. 6.425 (Advisory

Committee Notes).

In the instant case, at the time *Halbert* was decided, Petitioner already had been

appointed counsel on appeal. Shortly thereafter, on June 28, 2005, appointed counsel filed a motion

to vacate his appointment, and Petitioner was notified of the motion that same date. (*See* Compl.,

App'x B, docket #1-2 at 38.) Under established law, if a court-appointed appellate attorney finds

a "case to be wholly frivolous, after a conscientious examination of it, he should so advise the court

and request permission to withdraw." *Anders v. California*, 386 U.S. 738, 744 (1967). Such a

motion to withdraw must be accompanied by a brief referring to anything in the record that might possibly support the appeal. *Id.* In his motion to vacate the appointment, appointed appellate counsel declared that he had fully reviewed the record and had determined that no viable issue existed. He had discussed the case with Petitioner, but Petitioner refused to sign the form withdrawing the appeal and failed to advise counsel how Petitioner wished to proceed on appeal. The court granted the motion to vacate the appointment of appellate counsel on July 7, 2005. Nothing about *Halbert* suggests that, once an appointed attorney has been allowed to withdraw from the case for lack of a viable issue on appeal, an indigent defendant is constitutionally entitled to appointment of new counsel.

Further, as the state court determined, Petitioner's request for appellate counsel was untimely. Petitioner filed a *pro per* motion to withdraw the plea and for resentencing on August 11, 2005. At that time, Petitioner made no effort to contest the withdrawal of his attorney or to seek appointment of a new attorney. The court denied the motion on October 18, 2005. Thereafter, on October 25, 2005, Petitioner moved to modify the order of restitution, which the court denied on December 14, 2005. Again, Petitioner made no request for the appointment of counsel. In fact, not until March 16, 2006, nearly nine months after *Halbert* was decided, did Petitioner file a motion for appointment of appellate counsel. In its order denying the request for counsel, the trial court specifically noted that Petitioner had waited nearly eight months after the court had granted prior appellate counsel's motion to vacate his appointment as counsel before submitting a request for appoint of counsel. The court therefore concluded, *inter alia*, that the request for appointment of counsel was untimely.

The *Halbert* decision does not suggest that procedural limits on the exercise of constitutional rights are unenforceable. *See People v. Beard*, No. 283143, 2009 WL 454970, at *1 (Mich. Ct. App. Feb. 24, 2009). Petitioner's constitutional rights were not violated because he had the opportunity to move for the appointment of an appellate attorney. Indeed, by way of comparison, Michigan Court Rule 6.425(G)(1)(c) was adopted on July 13, 2005 to conform to the ruling in *Halbert*. *See* MICH. CT. R. 6.425 (Advisory Committee notes). The court rule provides:

> In a case involving a conviction following a plea of guilty or nolo contendere, if the defendant is indigent, the court must enter an order appointing a lawyer if the request is filed within 42 days after sentencing.

*Id.* (effective Jan. 1, 2006). No case law, much less Supreme Court case law, suggests that such a rule is unconstitutional. Even assuming that Petitioner should have been allowed the same amount of time after the effective date of the court rule to make his request for counsel, the new court rule was in place for three and one-half months before Petitioner requested appointment of a new appellate attorney. Even allowing such a generous calculation, Petitioner fails to demonstrate that he acted with the requisite diligence in seeking appellate counsel.

In his reply brief, Petitioner states that he filed a new request to appoint appellate counsel on July 5, 2005. He acknowledges, however, that no such request was docketed in the state court. (*See* Cir. Ct. Docket Sheet, docket #10.) Petitioner further acknowledges that, at the time the alleged request was made, he was still represented by counsel. Notwithstanding these impediments, Petitioner nevertheless asserts that he was diligent in requesting the appointment of counsel.

Petitioner's argument is unpersuasive. Even were the Court to assume he attempted to file such a form request,[4] Petitioner did nothing more for eight months to follow-up on the status

---

[4] Such an assumption is wholly unsupported. Petitioner has failed to introduce any evidence, even his own affidavit, to support the argument in his brief.

of that request – even to determine whether it had been received.  In the meantime, he proceeded to represent himself on motions before the circuit court and in his appeal in the court of appeals.  As a result, Petitioner was far from diligent in seeking the appointment of appellate counsel.

In sum, the state court's rejection of Petitioner's request for counsel as untimely constituted a patently reasonable application of the Supreme Court's decision in *Halbert*.  Accordingly, I recommend that Petitioner's first habeas ground be denied.

II.     Illusory Plea

In his second ground for habeas relief, Petitioner argues that his plea agreement was illusory.  He contends that his attorney coerced him into pleading guilty by encouraging him to accept a guilty plea to the charges of armed robbery and being a fourth felony offender.  Petitioner argues that such advice constituted the ineffective assistance of counsel.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Moreover, a state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards first set forth by the Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969).  *See also Bousley v. United States*, 523 U.S. 614, 618 (1998).  The propriety of a guilty plea is assessed by reviewing the totality of the circumstances surrounding the plea.  *Brady v. United States*, 397 U.S. 742, 748-49 (1970).  A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea.  *See Brady*, 397 U.S. at 748.  In general, a defendant

is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991). When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.*; *see also Parke v. Raley*, 506 U.S. 20, 29-30 (1992).

As previously discussed, Petitioner pleaded guilty to the armed robbery and to the fourth felony supplement in exchange for a *Cobbs* agreement to sentence him at the bottom of the applicable minimum sentencing guidelines, which was at that time calculated to be 81 months. His agreement, therefore, was hardly illusory. He guaranteed that he would be permitted to withdraw his plea unless he received an 81-month minimum sentence on offenses that each carried a maximum term of life imprisonment. (*See* Plea Tr., 4.) At his plea hearing, the sentencing judge carefully informed Petitioner of the maximum penalties he was facing, and Petitioner indicated that he understood those consequences. (Plea Tr., 4.) His sentence therefore was knowing. *See Stumpf*, 367 F.3d at 600.

Moreover, the plea transcript clearly supports the state court's finding that the plea was both voluntary and intelligent. The court carefully asked Petitioner if he understood English and the content of his plea. (Plea Tr., 3.) Petitioner expressed his understanding of all of his trial

rights and that he was waiving those rights by pleading guilty. (Plea Tr., 4-6.) Petitioner also expressly denied that any "und[ue] influence, compulsion, or duress" had been used against him to force him to plead guilty. (Plea Tr., 6.) He denied being threatened by anyone to induce his plea, and he expressed his understanding that, if the plea was accepted, he would be giving up any claim that the plea was the result of threats or promises that were not disclosed to the court. (Plea Tr., 7.) He also testified that the only promise that had been made to him was that, if the court determined at sentencing that the minimum sentence would be more than 81 months, the court would allow Petitioner to withdraw his plea. (Plea Tr., 7.) A petitioner is bound by the statements he makes in response to the court's inquiries at sentencing. *See United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993). Further, both the prosecutor and defense counsel also stated that they were unaware of any other promises, threats or inducements that had not been disclosed. (Plea Tr., 11.) The record therefore clearly indicates that the plea was voluntary and intelligent, and the state court's findings are therefore presumed to be correct. *See Stumpf*, 367 F.3d at 600. Petitioner did not attempt to identify any facts that would undermine that presumption.

Petitioner also has failed to demonstrate the ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The

defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Here, Petitioner cannot meet either prong of the inquiry. First, Petitioner cannot overcome the presumption that counsel rendered reasonable assistance. As previously discussed, the plea agreement provided that Petitioner would receive a guaranteed minimum sentence of less

than eight years on two possible life offenses or that Petitioner would have an opportunity to withdraw the plea. Counsel's advice to accept the agreement was entirely reasonable and strategic.

Moreover, Petitioner cannot demonstrate the requisite prejudice required by the second prong of *Strickland* and *Hill*. Nothing in the record indicates that Petitioner would have chosen to go to trial rather than accept the minimum sentence of 108 months that he ultimately was given. Indeed, Petitioner was allowed to withdraw his plea before sentencing because the minimum sentencing guideline range that was calculated after the presentence investigation was 108 months. (*See* S. Tr., 3.) Petitioner initially elected to withdraw his plea, but reconsidered and proceeded to sentencing. At sentencing, he was given a minimum at the bottom of the newly calculated range. Because Petitioner elected not to withdraw his plea after learning of the sentencing guideline range and he was sentenced at the bottom of that range, he cannot now demonstrate that he would have gone to trial had counsel not recommended the plea agreement. *Hill*, 474 U.S. at 59.

As a result, the state courts' summary denials of Petitioner's second habeas ground constituted reasonable applications of established Supreme Court precedent.

III.    Sentencing Errors

In his third ground for habeas relief, Petitioner argues that various sentencing guideline variables, OV-1, OV-2, OV-3 and OV-4,[5] were improperly scored. He therefore asserts that he was sentenced on the basis of inaccurate information.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

---

[5]*See* MICH. COMP. LAWS § 777.31 (Offense Variable 1, scoring points based on the aggravated use of a weapon); MICH. COMP. LAWS § 777.32 (Offense Variable 2, scoring points based on the lethal potential of the weapon possessed or used); MICH. COMP. LAWS § 777.33 (Offense Variable 3, scoring points based on physical injury to a victim); and MICH. COMP. LAWS § 777.34 (Offense Variable 4, scoring points based on psychological injury to a victim).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). *See also Doyle,* 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner's sentence clearly is not arbitrary or shocking, as he received a minimum sentence of nine years on two offenses with potential life terms. *See Doyle*, 347 F. Supp. 2d at 485. Further, Petitioner does not provide any evidence the facts found by the court at sentencing were either materially false or based on false information. *See Tucker*, 404 U.S. at 447. Instead,

Petitioner argues only that the court should have reached a different conclusion based on the facts before it. Such claims clearly fall far short of the sort of egregious circumstances implicating due process. The state-court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

Moreover, Petitioner fails to demonstrate that counsel was ineffective in failing to object to the scoring of any variable. First, he has failed to provide any support for his claim that any offense variable was misscored. He therefore fails to overcome the strong presumption that counsel's performance was reasonable. *Strickland*, 466 U.S. at 689. Second, for the reasons previously discussed, he cannot demonstrate that he was prejudiced by counsel's performance because he cannot show that, but for counsel's alleged errors, he would have pleaded guilty. *Hill*, 474 U.S. at 59.

Accordingly, the state court's denial of Petitioner's third habeas ground constituted a reasonable application of established Supreme Court precedent.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Dated:  August 4, 2010                            /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).